UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>   v.<br><br>THE CITY OF BOSTON; MICHELLE WU, Mayor of the City of Boston, in her Official Capacity; BOSTON POLICE DEPARTMENT; MICHAEL A. COX, Police Commissioner, in his Official Capacity,<br><br>          Defendants. | No. 1:25-cv-12456 |

**COMPLAINT**

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

1. When President Trump took office, "[o]ur southern border [was] overrun by cartels, criminal gangs, known terrorists, human traffickers, smugglers, unvetted military-age males from foreign adversaries, and illicit narcotics that harm Americans." Proclamation 10,866, Declaring a National Emergency at the Southern Border of the United States, 90 Fed. Reg. 8327 (Jan. 20, 2025). Under his leadership, the Federal Government is employing its available legal measures to end that crisis, including the deployment of resources nationwide to remove criminals from our communities.

2. In the face of this monumental crisis, Boston Mayor Michelle Wu has repeatedly chosen to shield these criminals from federal law enforcement and reaffirmed Boston's

commitment to being a "sanctuary city."¹ In a recent letter to Attorney General Pamela J. Bondi, Mayor Wu went so far as to say that "Boston will never back down" from its sanctuary city policies.² Her resistance endangers public safety, resulting in a number of criminals being released into Boston who should have been held for immigration removal from the United States.

3. It is well settled that "[t]he Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). It is equally well settled that in our system of dual sovereignty the Federal Government depends upon the cooperation of State and local law enforcement agencies to help identify, apprehend, and detain removable aliens in order to effectuate their removal and ensure that they do not abscond from federal law enforcement. "Indeed," as the Supreme Court has recognized, "[Congress] has encouraged the sharing of information about possible immigration violations" between federal, state, and local authorities. *Id*. at 412.

4. Cities cannot obstruct the Federal Government from enforcing immigration laws. When that occurs, a city breaks the law. The City of Boston is doing just that.

5. The Boston Trust Act is the City's ordinance that directs the Boston Police Department not to cooperate with federal immigration enforcement agencies. Specifically, it requires Boston police officers to refuse federal immigration detainers—a document by which the government provides notice of its intent to assume custody of a removable alien detained in the custody of another law enforcement agency—which are essential to enforcing immigration law.

6. Specifically, the Boston Trust Act directs Boston law enforcement officers (1) to

---

¹ Walter Wuthmann, *Wu reasserts Boston's sanctuary city status ahead of Trump's second term*, WBUR (Nov. 18, 2024) https://perma.cc/N43R-UXMJ
² Letter, City of Boston, Response to Aug. 13, 2025 letter from Attorney General Bondi to Mayor Wu, https://perma.cc/JBU4-GEAE

withhold basic information about aliens who are in City custody and are subject to federal immigration custody, including custody status or release date, from the Federal Government, and (2) to deny federal officers access to such individuals to effect their safe transfer to federal immigration custody when presented with a federal administrative warrant. Bos., Mass., Mun. Code ch. 11, §§ 1.9(D)(1)(a)-(b) (2019). These provisions reflect that City's intentional effort to obstruct the Federal Government's enforcement of federal immigration law and to impede consultation and communication between federal, state, and local law enforcement officials that is necessary for federal officials to carry out federal immigration law and keep Americans safe.

7.      According to the U.S. Immigration and Customs Enforcement (ICE), the criminal charges on the detainer requests issued by the Boston Field Office included violent and serious crimes, including homicide, assault, larceny, and sexual and drug-related offenses. Similarly, assault and drug trafficking were the two most charged offenses among those whom ICE sought to detain. Due to the Boston Trust Act, many of these criminals were released directly into Boston communities.

8.      The challenged provisions of Boston law thus have the effect of making it more difficult for, and deliberately impeding, federal immigration officers' ability to carry out their responsibilities in that jurisdiction. These provisions intentionally obstruct the sharing of information envisioned by Congress, including basic information such as release dates and custodial status, thereby impairing federal detention of removable aliens, including dangerous criminals, as required by federal law; they further purport to direct federal officials to procure criminal arrest warrants in order to take custody of removable aliens, even though Congress has made an explicit policy choice that such removals can be effectuated by *civil* arrest warrants for immigration enforcement; and they facilitate the release of dangerous criminals into the

community by directing local employees to refuse to transfer such aliens to federal officials in a secure environment—thereby resulting in their release onto the streets, where they could reoffend and commit serious crimes.

9. The Supremacy Clause prohibits the City of Boston and its officials from obstructing the Federal Government's ability to enforce laws that Congress has enacted or to take actions entrusted to it by the Constitution and from singling out the Federal Government for adverse treatment thereby discriminating against the Federal Government. The Boston Trust Act runs afoul of these constitutional principles and should be enjoined.

## JURISDICTION AND VENUE

10. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

11. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because Defendants City of Boston, Mayor Michelle Wu, the Boston Police Department, and Commissioner Michael A. Cox reside within the District of Massachusetts and because all Defendants' acts or omissions giving rise to this Complaint arose from events occurring within this judicial district.

12. The Court has the authority to grant the requested relief under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

13. Plaintiff, the United States of America, regulates immigration under its constitutional and statutory authorities, and it enforces federal immigration laws through its Executive agencies, including the Departments of Justice, State, Labor, and Homeland Security (DHS) as well as DHS's component agencies ICE and U.S. Customs and Border Protection (CBP).

14. Defendant City of Boston is a municipal corporation of the State of

Massachusetts.

15. Defendant Michelle Wu is the Mayor of Boston and is being sued in her official capacity. The Mayor of Boston is the chief executive officer of the City. Moreover, according to the Boston City Charter, "[e]very order, ordinance, resolution and vote of the city council . . . shall be presented to the mayor for his approval. If he approves it, he shall sign it; and thereupon it shall be in force." The Charter of the City of Boston, § 17D (2024). Furthermore, "[a]ll heads of departments . . . shall be appointed by the mayor without confirmation by the city council." *Id*. § 35.

16. Defendant Boston Police Department is the primary law enforcement agency of Boston, Massachusetts.

17. Defendant Michael A. Cox is the Police Commissioner of the Boston Police Department. He was appointed to the position by Mayor Wu in 2022.

## FEDERAL IMMIGRATION LAW

18. The Constitution affords Congress the power to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," *id*. art. I, § 8, cl. 3, and affords the President of the United States the authority to "take Care that the Laws be faithfully executed," id. art. II, § 3.

19. The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, a city ordinance's enactment is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), or if it "discriminate[s] against the

United States or those with whom it deals," *South Carolina v. Baker*, 485 U.S. 505, 523 (1988).

20. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws, the execution of which States cannot obstruct or take discriminatory actions against. *See Arizona*, 567 U.S. at 394–95; *accord North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality); *id.* at 444–47 (Scalia, J., concurring).

21. Congress has exercised its authority to make laws governing the entry, presence, status, and removal of aliens within the United States by enacting various provisions of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

22. These laws confer upon the Executive Branch extensive authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or found to be, unlawfully in the United States. *See* 8 U.S.C. §§ 1182, 1225, 1226, 1227, 1228, 1231.

23. In effectuating these provisions, DHS may issue an "immigration detainer" that "serves to advise another law enforcement agency that [DHS] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a); *see* 8 U.S.C. §§ 1103(a)(3), 1226(a), (c), 1231(a), 1357(d). An immigration "detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody[.]" 8 C.F.R. § 287.7(a).

24. DHS may also require that custody be extended by a period not to exceed 48 hours, "in order to permit assumption of custody by the Department." *Id.* § 287.7(d). In other instances, DHS is statutorily required—upon request from local authorities—to consider whether to issue a detainer for an alien in local custody. *See* 8 U.S.C. § 1357(d) (addressing violations of laws regulating controlled substances). In other cases, DHS is required to take into custody certain

aliens, including any inadmissible alien who is "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]" 8 U.S.C. § 1226(c)(1)(E)(ii). DHS must also take into custody other inadmissible aliens who are present in the United States without being admitted or paroled, who have committed fraud or misrepresented a material fact in relation to seeking admission to the United States, or who are not in possession of a valid unexpired entry document. *Id*. § 1226(c)(1)(E)(i).

25. On January 29, 2025, President Trump signed into law the Laken Riley Act, named for the nursing student killed by an alien who, after entering the United States illegally, committed additional crimes but was released before immigration authorities could intervene. *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). The Laken Riley Act requires DHS to detain aliens who are unlawfully present in the United States and have been arrested for theft and other crimes. *Id.*

26. Congress has also codified basic principles of cooperation and comity between state and local authorities and the Federal Government. For example, federal law contemplates that removable aliens in state custody who have been convicted of state or local offenses will generally serve their state or local criminal sentences before being subject to removal but will be taken into federal custody upon the expiration of their state prison terms. *See* 8 U.S.C. §§ 1226(c), 1231(a)(1)(B)(iii), (a)(4).

27. "Consultation between federal and state officials is an important feature of the immigration system." *Arizona*, 567 U.S. at 411. Congress has therefore directed that a federal, state, or local government entity or official may not prohibit, or in any way restrict, any

government entity or official from sending to, or receiving from, DHS "information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a); *see id.* § 1644 (same); *see also id.* § 1357(g)(10)(A) (providing for state and local "communicat[ion] with [DHS] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States"). Likewise, "no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from," among other things, "[m]aintaining" "information regarding the immigration status, lawful or unlawful, of any individual," or "[e]xchanging such information with any other Federal, State, or local government entity." *Id.* § 1373(b).

28. Congress also preserved states and localities' ability "to cooperate with the [Secretary of DHS] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* § 1357(g)(10)(B).

29. Congress further sought to affirmatively penalize efforts to obstruct immigration enforcement by, among other things, prohibiting the "conceal[ing], harbor[ing], or shield[ing] from detection, or attempts to" accomplish the same, of any illegal "alien in any place, including any building or any means of transportation." *Id.* § 1324(a)(1)(A)(iii).

30. DHS, through ICE and CBP, performs a significant portion of its law enforcement activities in the City of Boston. For example, since Fiscal Year 2024, ICE Enforcement and Removal Operations (ERO) issued 880 detainers, and made 7,736 arrests within the Boston Field Office's area of responsibility, which includes the State of Massachusetts, as well as Connecticut, Maine, New Hampshire, and Vermont. And CBP is responsible for enforcing the immigration laws at international ports of entry, including apprehending attempted entrants with criminal convictions or who are national security concerns.

## FACTUAL BACKGROUND

### The Boston Trust Act

31. In 2014, the Boston City Council passed the "Boston Trust Act" to "ensure that all immigrants are able to fully participate in the civic and economic life of their neighborhoods and nurture and grow the spirit of unity in our City." Exhibit 1 – 2014 Boston Trust Act. The preamble states that "ICE issues civil immigration detainer requests which allow for prolonged detention during which ICE investigates the immigration status of suspected 'criminal aliens' in local custody." *Id*. The preamble goes on to declare that "[w]hen local law enforcement officials indiscriminately honor all ICE civil immigration detainer requests, including those that target non-criminal aliens, immigrant residents are less likely to cooperate and public trust erodes, hindering the ability and effectiveness of Boston's police force." *Id*. Accordingly, the Boston Trust Act directs the Boston Police Department to categorically flout federal immigration detainer requests so that removable aliens can evade ICE apprehension.

32. The Boston Trust Act was amended in 2019, Exhibit 2 – 2019 Boston Trust Act, strengthening its obstructionist policy by "making clear the role of Boston Police officers, outlining how they will not: ask individuals about their immigration status, share information with ICE, make arrests based solely on ICE administrative warrants, perform the functions of federal immigration officers, and transfer an individual to ICE custody." City of Boston, *Signing of Trust Act Amendments into Law* (Dec. 19, 2019), https://perma.cc/NNP8-BCKG; *see generally* Bos., Mass., Mun. Code ch. 11, § 1.9 (2019). The Boston City Councilor who authored the Boston Trust Act touted that the 2019 amendment ensures "that our city's law enforcement personnel and resources are able to focus on public safety, not enforcing failed federal immigration policy." *Signing of Trust Act Amendments into Law*, *supra*.

33. The amended Boston Trust Act expressly directs that "[a] law enforcement official shall not detain an individual solely on the basis of a civil immigration detainer request or an ICE administrative warrant after the individual is eligible for release from custody, unless ICE has a criminal warrant, issued by a Judicial Officer, for the individual." Bos., Mass., Code ch. 11, § 1.9(B).

34. The Boston Trust Act further directs law enforcement officials not to use "Agency or Department monies or personnel to interrogate, detain or arrest persons for immigration enforcement purposes . . . including any of the following":

(a) "Inquiring of an individual his or her immigration status." *Id*. § 1.9(D)(1)(a)(1).

(b) "Detaining an individual solely on the basis of a civil immigration detainer request." *Id*. § 1.9(D)(1)(a)(2).

(c) "Providing personal information . . . or [information] regarding a person's release date or time to the federal immigration and Customs Enforcement Agency." *Id*. § 1.9(D)(1)(a)(3).

(d) "Providing personal information . . . or [information] regarding a person's release date or time to ICE-[Homeland Security Investigations (HSI)] solely for the purpose of enforcing civil violations of United States immigration laws." *Id*. § 1.9(D)(1)(a)(4).

(e) "Making arrests based solely on ICE administrative warrants including administrative warrants after the individual is eligible for release from custody." *Id*. § 1.9(D)(1)(a)(5).

(f) "Performing the functions of an Immigration Officer." *Id*. § 1.9(D)(1)(a)(6).

35. In addition, the Boston Trust Act directs law enforcement to prohibit "transfer[ring] an individual to immigration authorities unless authorized by a judicial warrant or other judicial order." *Id*. § 1.9(D)(1)(b).

36. Although the Boston Trust Act contains certain exceptions that allow law

enforcement officials to cooperate with ICE, Bos., Mass., Code ch. 11, § 1.9(D)(2)-(3), those exceptions largely operate to advance the City of Boston's own criminal justice priorities without reciprocal cooperation with ICE. *See, e.g.*, *id*. § 1.9(D)(2)(c) (providing that "this Section does not prevent any Boston law enforcement official" from "[c]onducting enforcement or investigative duties associated with partnerships with federal authorities or task forces . . . so long as the primary purpose of the partnership or task force is not to enforce civil violations of United States immigration laws.").

37. In December 2024, the Boston City Council adopted a resolution to reaffirm the Boston Trust Act. City of Boston, *Council Reaffirms the Trust Act* (Dec. 6, 2024), https://perma.cc/2JC8-KFST.

## THE CHALLENGED PROVISIONS' INTERFERENCE WITH FEDERAL IMMIGRATION ENFORCEMENT IN BOSTON

38. The Boston Police Department was once a cooperative partner with ICE's immigration enforcement efforts. Throughout 2015, the Boston Police Department honored all civil immigration detainer requests from ICE. Exhibit 3 – 2015 BPD's Boston Trust Act Report.

39. But every year since then—as the national crisis with illegal immigration reached its peak—the City of Boston directed its law enforcement to become obstructionist by refusing to honor any of ICE's civil immigration detainers. *See* Exhibit 4 – 2016 BPD's Boston Trust Act Report; Exhibit 5 – 2017 BPD's Boston Trust Act Report; Exhibit 6 – 2018 BPD's Boston Trust Act Report; Exhibit 7 – 2021 BPD's Boston Trust Act Report; Exhibit 8 – 2022 BPD's Boston Trust Act Report; Exhibit 9 – 2023 BPD's Boston Trust Act Report; Exhibit 10 – 2024 BPD's Boston Trust Act Report.[3]

---

[3] BPD reports for calendar years 2019 and 2020 could not be located in the City of Boston's Legislative Management System, available at https://boston.legistar.com/

40. The Boston Police Department's proffered reason for refusing to honor ICE's immigration detainer requests is the Boston Trust Act. *See*, *e.g.*, Exhibit 10. Illustratively, in the most recent report, Defendant Commissioner Michael A. Cox indicated that although the Boston Police Department received 15 immigration detainer requests from ICE, none were "acted upon per the Boston Trust Act." *Id*. Thus, "[z]ero individuals were detained by the BPD pursuant to" a detainer request and "[z]ero individuals were transferred to the ICE custody." *Id*. Commissioner Cox concluded his report by stating that "[t]he Boston Police Department remains committed to complying with the Boston Trust Act and to building and strengthening relationships and trust with all our communities." *Id*.

41. According to ICE, the Boston Police Department has refused to provide ICE agents access to the City's detention areas to arrange for a safe custodial transfer of an alien even when ICE agents are present at the police station and capable of taking custody of that alien.

42. Congress, in comity to States, permits state and local jurisdictions to fully punish aliens for state criminal violations prior to removal. *See* 8 U.S.C. § 1231(a)(4)(A) (providing that, subject to limited exceptions, federal agents "may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment"). But Congress also crafted a statutory scheme that clearly envisioned the Federal Government being able to detain and remove those aliens, once their state criminal proceedings and sentences concluded. The Boston Trust Act, facially and as applied, is at cross-purposes with that congressional design.

43. The Boston Trust Act runs directly afoul of 8 U.S.C. § 1373 by requiring Boston law enforcement officers to refuse to "provid[e] personal information . . . or [information] regarding a person's release date or time to the federal Immigration and Customs Enforcement Agency," Bos., Mass., Code ch. 11, § 1.9(D)(1)(a)(3), or to "ICE-HSI solely for the purpose of

enforcing civil violations of United States immigration laws," *id*. § 1.9(D)(1)(a)(4). The City of Boston has therefore prohibited activities that federal law expressly contemplates.

44. Moreover, the City of Boston's failure to provide exceptions to its prohibition on cooperation with federal immigration enforcement conflicts with federal law governing what constitutes a predicate for inadmissibility or removability. *See* U.S.C. §§ 1182(a)(2), 1227(a)(2). Federal agents are required to detain illegal aliens who have committed certain offenses upon their release from state custody. Congress not only recently reaffirmed its commitment to this mandate but augmented the authority of federal agents in this space by adding predicate offenses that trigger this detention requirement. *Id.* §§ 1226(c), (c)(3), 1357(d); *see also* Laken Riley Act, Public L. No. 119-1, 139 Stat. 3 (2025).

45. Boston's policy of denying ICE access to removable aliens in its custody also conflicts with the congressionally established system of civil administrative warrants as the basis for immigration arrest and removal—a system that does not require or contemplate use of a judicial warrant for civil immigration enforcement. *See* 8 U.S.C. §§ 1226(a), 1231(a).

46. Further, upon information and belief, because of the challenged laws, DHS lacks the ability to consistently and readily obtain from local law enforcement the release dates of aliens whom DHS has reason to believe are removable from the United States, and DHS lacks access to such aliens to facilitate the transfer of custody, even where DHS presents a congressionally authorized civil administrative warrant of arrest or removal, *see id.* §§ 1226(a), 1231(a), or has transferred those aliens to local law enforcement in the first instance to permit their prosecution for a state crime.

47. By mandating restrictions on basic information sharing and barring DHS access to aliens in the City of Boston's custody upon their release as provided by federal law (e.g., an

administrative warrant), the Boston Trust Act requires federal immigration officers either (1) to engage in difficult and dangerous efforts to re-arrest aliens who were previously in local custody, endangering immigration officers, the particular alien, and others who may be nearby, or (2) to determine that it is not appropriate to transfer an alien to local custody in the first place, in order to comply with their mission to enforce the immigration laws.

48. The City of Boston has no lawful interest in enabling removable aliens to evade apprehension by federal law enforcement.

49. The City of Boston singles out the Federal Government for disfavored treatment. While the City of Boston enjoys federal cooperation with the Boston Police Department—including with ICE-HSI—in criminal enforcement, the Boston Trust Act expressly shuts out substantially all cooperation with ICE in civil immigration enforcement.

50. These provisions are an obstacle to the Federal Government's enforcement of federal immigration laws and discriminate against federal immigration enforcement, as well as (with respect to the information-sharing and maintenance restrictions) expressly violate 8 U.S.C. § 1373.

51. In rejecting congressionally authorized means of enforcing federal immigration law, including detainers and administrative warrants, these provisions constitute unlawful direct regulation of the Federal Government.

## CLAIMS FOR RELIEF

### COUNT ONE – VIOLATION OF THE SUPREMACY CLAUSE (PREEMPTION)

52. Plaintiff hereby incorporates paragraphs 1 through 51 of the Complaint as if fully stated herein.

53. The challenged Boston Trust Act constitutes and creates obstacles to the

enforcement of federal immigration law.

54. The challenged provisions of the Boston Trust Act also undermine federal immigration law's protections for information sharing and are thus preempted under both express and conflict preemption principles. *E.g.*, 8 U.S.C. §§ 1373(a), 1644.

55. Federal immigration law therefore preempts the challenged provisions of the Boston Trust Act.

56. Accordingly, those provisions violate the Supremacy Clause, interfere with federal law, and create obstacles to the enforcement of federal immigration law both on their face and as applied to the Federal Government.

## COUNT TWO – VIOLATION OF THE SUPREMACY CLAUSE (UNLAWFUL DISCRIMINATION AGAINST THE FEDERAL GOVERNMENT)

57. Plaintiff hereby incorporates paragraphs 1 through 56 of the Complaint as if fully stated herein.

58. Defendants' enforcement of the Boston Trust Act discriminates against the Federal Government.

59. The challenged provisions single out federal immigration officials, expressly and implicitly, for unfavorable and uncooperative treatment when other law enforcement officials are not so treated.

60. Accordingly, the Boston Trust Act violates the Doctrine of Intergovernmental Immunity and alternatively is invalid on that basis.

## COUNT THREE – VIOLATION OF THE SUPREMACY CLAUSE
## (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)

61. Plaintiff hereby incorporates paragraphs 1 through 60 of the Complaint as if fully stated herein.

62. Defendants' enforcement of the challenged provisions of the Boston Trust Act effects direct regulation of the Federal Government.

63. By refusing to honor civil detainers and warrants expressly authorized by Congress, Defendants have unlawfully eliminated these means for federal immigrations officials to carry out their statutory functions.

64. Accordingly, the Boston Trust Act effects regulation of the Federal Government and alternatively is invalid on that basis.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1. That this Court enter a judgment declaring that the Boston Trust Act violates the Supremacy Clause and is therefore invalid;

2. That this Court enter a judgment declaring that the Boston Trust Act violates 8 U.S.C. § 1373 and is therefore invalid;

3. That this Court issue preliminary and permanent injunctions that prohibit Defendants as well as their successors, agents, and employees, from enforcing the Boston Trust Act;

4. That this Court award the United States its costs and fees in this action; and

5. That this Court award any other relief it deems just and proper.

DATED: September 4, 2025                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

ALEXANDER K. HAAS
Director

JACQUELINE COLEMAN SNEAD
Assistant Director

/s/ *James Wen*_____
CRISTEN C. HANDLEY
JORDAN A. HULSEBERG
ELISABETH J. NEYLAN
JAMES J. WEN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 616-8185
Email: James.J.Wen@usdoj.gov

*Attorneys for the United States*