UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>THE CITY OF BOSTON; MICHELLE WU, Mayor of the City of Boston, in her Official Capacity; BOSTON POLICE DEPARTMENT; MICHAEL A. COX, Police Commissioner, in his Official Capacity,<br><br>        Defendants. | Civil Action No. 1:25-CV-12456-LTS |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION TO DISMISS THE COMPLAINT**

The Boston Trust Act ensures that local resources go to local priorities, reflecting the needs and values of the people and City of Boston. The Tenth Amendment protects Boston's right to make such decisions free from federal coercion.

The United States[1] identifies no valid basis for its preemption claims, nor could it, as there is no conflict between the Trust Act and federal law. Under the Trust Act, Boston does not participate in federal civil immigration enforcement. Under the Immigration and Nationality Act ("INA"), it is not required to. The United States, therefore, is unable to answer the question fundamental to its case: Where federal law makes local participation in a regulatory regime voluntary, how can the decision not to participate be preempted?

Furthermore, the compulsory local participation that the United States demands would be unconstitutional. The federal government cannot commandeer state and local governments to advance a federal policy agenda, yet that is precisely what the United States seeks here.

Finally, the Trust Act neither regulates nor discriminates against the federal government. The Trust Act regulates only City personnel; it says nothing about how federal officials may—within the bounds of their constitutional and statutory authority—perform federal functions. The United States identifies neither any direct regulation of the federal government nor any similarly situated comparator for civil immigration enforcement authorities, as required to maintain its intergovernmental immunity claims.

This Court should dismiss the United States' Complaint, as have the other courts to consider largely identical claims, none of which the United States acknowledges.[2]

---

[1] In its Opposition, the United States refers to itself alternatively as "the United States," "the Federal Government," and "the Government." The City does not refer to Plaintiff as "the Government" for reasons fundamental to this case. There is not a single "Government" in the United States; the Constitution provides for local governance in balance with, and independent from, federal authority.

[2] The United States fails to cite the following recent decisions: *United States v. Illinois*, 796 F. Supp. 3d 494 (N.D. Ill. 2025), *appeal docketed*, No. 25-2904 (7th Cir. Oct. 27, 2025); *United States v. New York*, No. 1:25-CV-00744, 2025 WL 3205011 (N.D.N.Y. Nov. 17, 2025) ("*New York I*"), *appeal docketed*, No. 26-104 (2d Cir. Jan. 16, 2026); *United States v. New York*, No. 1:25-CV-00205, 2025 WL 3718641 (N.D.N.Y. Dec. 23, 2025) ("*New York II*").

1

**ARGUMENT**

I.     **Federal Law Does Not Preempt the Trust Act**

The Trust Act does not pose an obstacle to federal enforcement of the INA; it merely reflects Boston's decision not to affirmatively assist federal immigration authorities, as the INA permits.[3] Nor does the Trust Act expressly conflict with 8 U.S.C. §§ 1373 and 1644; it does not prohibit City officials from sharing immigration status information, and its savings clause prevents a conflict, were there any doubt. The United States may prefer the City deploy its resources to perform federal immigration functions, but the United States' preference has no preemptive effect. *See Kansas v. Garcia*, 589 U.S. 191, 212 (2020) ("[T]he possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption."); *United States v. California*, 921 F.3d 865, 891 (9th Cir. 2019) ("*California II*") ("[T]he federal government was free to *expect* as much as it wanted, but it could not *require* California's cooperation without running afoul of the Tenth Amendment." (emphasis in original)).

As the Northern District of New York recently wrote in a parallel case:

> Fundamentally, the United States fails to identify any federal law mandating that state and local officials generally assist or cooperate with federal immigration enforcement efforts. Nor could it. No such federal laws exist because the Tenth Amendment prohibits Congress from conscripting state and local officials and resources to assist with federal regulatory schemes, like immigration enforcement.

*New York I*, 2025 WL 3205011, at *15.

Given the lack of preemptive authority, and the constitutional infirmity of any such compulsory federal directive, Count I should be dismissed.

---

[3] In its Opposition, the United States summarizes its preemption arguments—obstacle and express—as based on just 8 U.S.C. §§ 1373(a) and 1644. Dkt. No. 53 at 8 ("The Court should deny Defendants' motion to dismiss the conflict and express preemption claims in Count One because the Complaint sufficiently alleges interference with federal immigration enforcement under 8 U.S.C. §§ 1373(a) and 1644 . . . ."). However, the Opposition then references other sections of the INA in the body of the United States' argument. *See id.* at 8-12. The City will assume a broad view of the United States' claims in the interest of completeness. But the United States' lack of clarity on the bases for its claims betrays that it can offer no viable legal theory.

2

## A. The United States Can Cite No Obstacle the Trust Act Poses to the INA

Despite the United States' unsupported assertion to the contrary, *see* Dkt. No. 53 at 8-12 (citing no cases on conflict preemption of federal immigration laws, despite numerous decisions on this topic), the City's decision not to affirmatively assist federal immigration enforcement does not constitute an "obstacle" to federal officials' duties under the INA. An obstacle arises only when preemption "was the clear and manifest purpose of Congress." *Arizona v. United States*, 567 U.S. 387, 400 (2012). Congress has expressed no such purpose here. The INA merely invites the City's cooperation; it does not, and could not, require it.

Because the United States cannot identify federal law with which the Trust Act conflicts, it resorts to pointing out where the Trust Act does not make federal officials' work easier. But not making federal work easier is not the same as obstructing it. *See Illinois*, 796 F. Supp. 3d at 529 ("[A]bsent the [local] Policies, it might be easier for immigration agents to discharge their obligations under the INA . . . . But because the INA merely offers States the opportunity to assist in civil immigration enforcement, the Policies don't make ICE's job more *difficult*; they just don't make it *easier*." (emphasis in original) (citations omitted)).[4] For instance, the United States argues that the Trust Act frustrates provisions of the INA regarding detainers and administrative warrants: 8 C.F.R. §§ 287.7(a), (d); 8 U.S.C. §§ 1226(a), (c), and § 1231. *See* Dkt. No. 53 at 9-10. However, as the United States concedes, a detainer is just a request. *Id.* at 9 (citing 8 C.F.R. § 287.7(a)); *see also Morales v. Chadbourne*, 793 F.3d 208, 214-15 (1st Cir. 2015) ("[T]he sole purpose of a detainer is to *request* the continued detention of an alien . . . ." (emphasis added)). "Even if the INA evinces Congress's hope [or] expectation . . . that States . . .

---

[4] *See also McHenry Cnty. v. Raoul*, 44 F.4th 581, 592 (7th Cir. 2022) ("*McHenry Cnty. II*"); *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 178 (5th Cir. 2018); *California II*, 921 F.3d at 888; *City of Chicago v. Sessions*, 888 F.3d 272, 282 (7th Cir. 2018), *vacated en banc in part on other grounds*, Nos. 17-2991 & 18-2649, 2018 WL 4268814 (7th Cir. Aug. 10, 2018); *Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 362, 381-82 (D.N.J. 2020), *aff'd sub nom.*, *Ocean Cnty. Bd. of Comm'rs v. Att'y Gen. of State of N.J.*, 8 F.4th 176 (3d Cir. 2021).

3

act in accordance with the detainer request, that is not, as a legal matter, sufficient for obstacle preemption." *Illinois*, 796 F. Supp. 3d at 528-29 (citation modified). Similarly, 8 U.S.C. §§ 1226(a), (c), and 1231 "place the burden of complying with the INA on the federal government, not state and local authorities," and so cannot support an obstacle preemption claim. *Cnty. of Ocean*, 475 F. Supp. 3d at 382.[5]

Likewise, the INA does not require the City to share the information the United States seeks. "The sum of [the United States'] contentions with respect to conflict preemption is that it could be easier to enforce federal immigration priorities if federal authorities had unfettered access to [Defendant's] information." *New York II*, 2025 WL 3718641, at *7. But 8 U.S.C. §§ 1373 and 1644 do not require the City to share particular information; they simply bar states and localities from prohibiting the sharing of individuals' citizenship or immigration status. As discussed further below, the Trust Act contains no such prohibition, and although the City providing information may be helpful to the United States, "refusing to help is not the same as impeding." *California II*, 921 F.3d at 888 (quoting *United States v. California*, 314 F. Supp. 3d 1077, 1104 (E.D. Cal. 2018) ("*California I*")). Here, too, there is no preemption.

### B. The United States Fails to Identify a Basis for Its Express Preemption Claim

The United States' express preemption claim relies entirely on an interpretation of §§ 1373 and 1644 that courts have universally rejected, as the United States acknowledges. Dkt. No. 53 at 11. And even under that interpretation, the United States' claim would fail.

The United States does not dispute that the Trust Act does not prohibit the sharing of citizenship or immigration status. Rather, the United States attempts to expand the scope of §§ 1373 and 1644, arguing that "information regarding . . . citizenship or immigration status"

---

[5] Though the United States raises the possibility of federal liability for its failure to adequately perform federal immigration functions, Dkt. No. 53 at 3 (citing 8 U.S.C. § 1226(f)), it offers no authority suggesting that such federal liability creates any obligations on state and local governments. It does not.

4

should be interpreted to include any "predicate facts necessary to determine one's citizenship or immigration status."[6] *See* Dkt. No. 53 at 12. So many courts have rejected the United States' overbroad interpretation of these statutes that the Northern District of New York recently found it "unnecessary to spill further judicial ink on the issue, other than to note that this 'conclusion [of a narrow interpretation] is amply supported by the text, structure, and history of § 1373.'" *New York II*, 2025 WL 3718641, at *7 (quoting *Illinois*, 796 F. Supp. 3d at 516 (collecting cases)).

Even under a broad interpretation of §§ 1373 and 1644—an interpretation for which there is no support—the Trust Act's savings clause and §§ 1373 and 1644's lack of preemptive effect would defeat the United States' claim. The savings clause provides that the Trust Act "does not prohibit or restrict any [City official] from complying with 8 U.S.C. §§ 1373 and 1644." Trust Act, § 1.9(D)(3). Under the savings clause, these sections take precedence over the Trust Act to the extent necessary, vitiating any claim of express preemption. *See City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1086 (9th Cir. 2022); *Illinois*, 796 F. Supp. 3d at 519 n.13.[7]

Furthermore, the United States fails to overcome the fact that §§ 1373 and 1644 do not regulate private actors and therefore do not have preemptive effect. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 478-79 (2018). Section 1373, by its plain terms, regulates only the conduct of "a Federal, State, or local government entity or official." 8 U.S.C. § 1373(a). And Section 1644 addresses how a "State or local government entity" may be regulated. 8 U.S.C. § 1644. Both sections regulate governments, not private actors, and the regulation of private actors in other sections of the INA is irrelevant, as discussed further below.

---

[6] Even the United States' own definition of "information regarding . . . citizenship or immigration status" would not actually capture the information the United States seeks. The United States argues that it is entitled to "Release-date information." Dkt. No. 53 at 12. Release date, however, is not a "predicate fact[] necessary to determin[ing] one's citizenship or immigration status." In reality, what the United States seeks is any information that it may find helpful in civil immigration enforcement. There is no basis in law for the claimed entitlement to such information.

[7] The United States claims the savings clause "authorizes City officials to provide ICE with aliens' statuses only." Dkt. No. 53 at 11 n.1. That is false. The savings clause provides for compliance with §§ 1373 and 1644, without reference to how those sections are interpreted.

5

*See Illinois*, 796 F. Supp. 3d at 521-22. Sections 1373 and 1644, which are the only basis for the United States' express preemption claim, therefore lack preemptive effect.

### C. The United States Seeks to Conscript the City into Immigration Enforcement, Which Would Violate the Tenth Amendment

In addition to lacking textual or precedential support, the United States' desired reading of the INA would result in unconstitutional commandeering of City resources and personnel. The United States attempts several legal and factual contortions to try to avoid this constitutional roadblock. Each attempt fails.

First, the INA does not provide the United States reprieve from the Tenth Amendment simply because it regulates—in sections not at issue here—private actors. The United States cites no authority for its assertion that "the Tenth Amendment is not implicated where the Federal Government seeks to regulate private actors." Dkt. No. 53 at 12.[8] This purported statement of law is far overbroad. A federal statute's regulation of certain private actions does not render the entire statutory scheme immune from Tenth Amendment restrictions. Rather, an anticommandeering analysis focuses on the specific provisions at issue; to do otherwise "would allow Congress to smuggle unconstitutional commands to States into specific provisions of a broader statute, and then rely on separate provisions for cover, even as its directives generate all the concerns associated with anticommandeering." *Illinois*, 796 F. Supp. 3d at 521-22.

Second, the Trust Act does not regulate private actors, despite the United States' bankshot arguments to the contrary. The Trust Act regulates only City entities and officials, as is the City's right. Going far beyond the Complaint's allegations, the United States asserts that, by not facilitating the federal government doing its own job, the City is "regulat[ing] private

---

[8] In an apparent attempt to lend this unsupported statement credibility, the United States later cites *Murphy* for the general proposition that preemption is possible in some circumstances in which state law conflicts with federal law regulating private actors. Dkt. No. 53 at 13. This proposition is a far cry from the unfounded assertion advanced by the United States.

6

individuals" in a manner that conflicts with the INA.[9] Dkt. No. 53 at 13. Setting aside the unpleaded and unsupported allegations, this alleged private regulation is too attenuated to provide the basis for a preemption claim. *See Illinois*, 796 F. Supp. 3d at 522 ("[D]ownstream effects on private actors" are "too attenuated from what § 1373 requires to conclude that § 1373 itself regulates private individuals.").

Third, again despite the United States' arguments to the contrary, the United States' position would require "Boston to enforce federal law." Dkt. No. 53 at 14. The United States claims that "it does not expect Boston police to . . . extend the custody of those who would otherwise be released." *Id.* But that is precisely what a detainer request would have Boston do, as the United States concedes elsewhere in its Opposition. *Id.* at 9 ("A detainer might also ask the City to retain custody over the alien for a brief period, thereby ensuring a safe transfer into federal custody."). The United States would also have the City provide facilities and information to federal officials. *Id.* at 10. All of these activities would commandeer City resources in violation of the Tenth Amendment. The United States' mere assertion otherwise is unavailing.[10]

Fourth, finally, "[t]he Extradition Clause provides no support for the United States's arguments and cannot overcome the Tenth Amendment's prohibition on commandeering." *Illinois*, 796 F. Supp. 3d at 532 n.20; *see* U.S. Const. art. IV, § 2, cl. 2. The Extradition Clause applies only to the states, and only to individuals subject to criminal charges brought under other states' authority, not civil violations of federal law. *See Illinois*, 796 F. Supp. 3d at 532 n.20.

---

[9] The United States also asserts that "Defendants are actively facilitating aliens' evasion of federal law," purportedly by arresting noncitizens sought by the federal government and then "terminating custody in a manner that hinders federal detention and removal." Dkt. No. 53 at 13. This assertion is entirely unfounded and goes well beyond even the unsupported allegations in the Complaint. In any case, the Trust Act only places *limitations* on the actions of City law enforcement officials and cannot be read to authorize the type of affirmative scheme alleged by the United States. For similar reasons, the argument from *amici* that the Trust Act is conflict-impossibility preempted because it "require[s] local officials to violate the federal criminal anti-harboring statute" also fails. *See* Dkt. No. 55-1 at 6-8.

[10] The United States does not address the fact that an expansive interpretation of the information-sharing provisions of §§ 1373 and 1644 would violate the Tenth Amendment.

7

The United States seeks to compel Boston to expend City resources advancing a federal policy agenda. This attempted compulsion is overreach, and it implicates each of the principles fundamental to the anticommandeering doctrine: protection from tyranny, political accountability through clarity between federal and state actions, and prevention of federal cost-shifting to the states. *See Murphy*, 584 U.S. at 473-74.

## II.  The Trust Act Does Not Violate the Intergovernmental Immunity Doctrine

The Trust Act is a neutral policy that regulates only local actors. It does not violate the intergovernmental immunity doctrine. The United States does nothing to distinguish its arguments here from those rejected in analogous cases.[11] Counts II and III should be dismissed.

### A.  Absent a Similarly Situated Entity, the Discrimination Claim Fails

The Trust Act does not treat any "similarly situated" entities differently from federal actors, as required to establish discrimination. *See Washington v. United States*, 460 U.S. 536, 544-45 (1983); *North Dakota v. United States*, 495 U.S. 423, 438 (1990). The comparators identified by the United States, "the general public and other law enforcement agencies," Dkt. No. 53 at 21, are not similarly situated to civil immigration enforcement officials. *Cf. New York II*, 2025 WL 3718641, at *10 ("Plaintiff's conclusory argument . . . that all other individuals and entities are treated more favorably than the federal government is unpersuasive."). To the extent the United States takes issue with the Trust Act's differential treatment of *criminal* law enforcement entities, those agencies are not similarly situated to civil immigration enforcement entities. *See Illinois*, 796 F. Supp. 3d at 534 (finding no discrimination where local policy was "based on the enforcement context (civil immigration versus criminal law), not governmental

---

[11] *See McHenry Cnty. v. Raoul*, 574 F. Supp. 3d 571, 581-82 (N.D. Ill. 2021) ("*McHenry Cnty. I*"), *aff'd in relevant part*, *McHenry Cnty. II*, 44 F.4th at 592-94 & n.7; *Cnty. of Ocean*, 475 F. Supp. 3d at 385; *California I*, 314 F. Supp. 3d at 1110-11, *aff'd in relevant part, California II*, 921 F.3d at 891; *New York I*, 2025 WL 3205011, at *16-18; *New York II*, 2025 WL 3718641, at *9-11; *Illinois*, 796 F. Supp. 3d at 533-36; *United States v. New Jersey*, No. 20-1364, 2021 WL 252270, at *13-14 (D.N.J. Jan. 26, 2021).

8

status"); *New Jersey*, 2021 WL 252270, at *14 (same).[12] A proper comparator is needed even where the Trust Act "touches on an exclusively federal sphere." *McHenry Cnty. II*, 44 F.4th at 594. Absent such a comparator, the United States' discrimination claim fails.

Furthermore, as discussed above, any impact on the federal government is merely that the Trust Act does not make federal work easier. Such an impact is not a "burden" and does not "subvert federal operations," as required to trigger intergovernmental immunity concerns. *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 323-24 (3d Cir. 2025) (citations omitted); *see also New York I*, 2025 WL 3205011, at *18 ("Unlike most discrimination cases in which a state affirmatively levies a tax or cost on the federal government, . . . the Executive Orders here simply decline to ease the burden of civil immigration enforcement by permitting state and local agents to assist.").[13]

Finally, the United States cannot avoid the unlawful commandeering implications of its discrimination claims. Boston would be compelled to, among other things, detain individuals pursuant to detainer requests, provide physical spaces for federal purposes, and dedicate resources to sharing information with federal authorities. These activities, unlike those at issue in the cases cited by the United States, would unconstitutionally compel participation in a federal regulatory program. *Compare King Cnty.*, 122 F.4th at 758 (noting that by seeking to invalidate a

---

[12] *Compare with United States v. California,* No. 2:18-cv-721, 2018 WL 5780003, at *6 (E.D. Cal. Nov. 1, 2018) (holding California law regulating transfer of federal lands did not neutrally regulate all lands "preserved for the public's benefit" because that status is "so directly linked to their federal status that it cannot serve as the basis for non-discriminatory differentiation"), *and United States v. King Cnty.*, 122 F.4th 740, 757 (9th Cir. 2024) (holding King County executive order did not neutrally regulate where it disallowed charter flights by ICE but allowed "identical" charter flights by others).

[13] The United States asserts in a footnote that, "The principles of the intergovernmental tax immunity doctrine, in which even nominal discrimination against the Federal Government establishes a violation, also apply to the general intergovernmental immunity doctrine. *See North Dakota*, 495 U.S. at 434-39." Dkt. No. 53 at 20 n.3. *North Dakota* does not support the proposition the United States asserts. To the contrary, the Court in *North Dakota* made clear: "Whatever burdens are imposed on the Federal Government by a neutral state law regulating its suppliers are but normal incidents of the organization within the same territory of two governments." 495 U.S. at 435 (citation modified). The Court also cited its holding in *Washington*: "[A] State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them." *Id.* at 438 (quoting 460 U.S. at 544-45).

local order, "the United States is not asking King County to 'enact and enforce' or otherwise 'administer' any federal immigration program"), *with California II*, 921 F.3d at 891 ("A finding that SB 54 violates the doctrine of intergovernmental immunity would imply that California *cannot* choose to discriminate against federal immigration authorities by refusing to assist their enforcement efforts—a result that would be inconsistent with the Tenth Amendment and the anticommandeering rule.") (emphasis in original), *and Illinois*, 796 F. Supp. 3d at 535-36 (same), *and New Jersey*, 2021 WL 252270, at *13 (same).

### B. The United States Identifies No Direct Regulation of the Federal Government

Declining to assist federal officials or dedicate local resources to an exclusively federal function does not constitute regulation of the federal government. The Trust Act regulates only local actors, as discussed above. Unlike in the cases cited by the United States, the Trust Act neither regulates the United States' relationships with private actors nor effectively controls federal conduct. *See, e.g.*, *CoreCivic, Inc.*, 145 F.4th at 325-28; *King Cnty.*, 122 F.4th at 756-57; *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 755-56 (9th Cir. 2022). Under the Trust Act, federal officials may perform their functions free of City regulation, but *local* resources will only be dedicated to federal efforts in prescribed circumstances, such as for criminal law enforcement. This decision is the City's prerogative under both the INA and the Tenth Amendment.

### III. The United States Does Not Dispute that the Claims Against the Mayor, Commissioner, and Boston Police Department Should Be Dismissed

The United States makes no argument that its claims against Mayor Wu, Commissioner Cox, and the Boston Police Department are appropriate. Accordingly, and for the reasons stated in the City's Motion, these claims should be dismissed.

### CONCLUSION

For the foregoing reasons, this Court should **DISMISS** the Complaint with prejudice.

Dated: January 28, 2026

Respectfully submitted,

**CITY OF BOSTON,
MICHELLE WU,
BOSTON POLICE DEPARTMENT,
AND MICHAEL A. COX**

By their attorneys:

Michael Firestone
Corporation Counsel


<u>/s/ Samuel B. Dinning</u>
Samuel B. Dinning (BBO # 704304)
Thomas J. Broom (BBO # 703136)
Edward F. Whitesell (BBO # 644331)
Senior Assistant Corporation Counsels
City of Boston Law Department
One City Hall Plaza, Room 615
Boston, MA 02201
(617) 635-4034
samuel.dinning@boston.gov
thomas.broom@boston.gov
edward.whitesell@boston.gov

Toby Merrill (BBO # 601071)
Erin Monju (DC # 90036952), *Pro Hac Vice*
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
erin@publicrightsproject.org
toby@publicrightsproject.org

11

## CERTIFICATE OF SERVICE

I, Samuel Dinning, hereby certify that on January 28, 2026, I served a copy of the foregoing document via electronic filing (ECF) on all counsel of record.

*/s/ Samuel B. Dinning*
Samuel B. Dinning
