**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

THE UNITED STATES OF AMERICA,

        Plaintiff,

v.

THE CITY OF BOSTON; MICHELLE WU,
Mayor of the City of Boston, in her Official
Capacity; BOSTON POLICE DEPARTMENT;
MICHAEL A. COX, Police Commissioner, in
his Official Capacity,

        Defendants.

Civil Action No. 1:25-CV-12456-LTS

**DEFENDANTS' RESPONSE TO UNITED STATES'**
**SUPPLEMENTAL BRIEFING ON STANDING**

The Boston Trust Act causes no injury to the United States, the purported ills the United States complains of are traceable only to the voluntary nature of certain Immigration and Nationality Act ("INA") provisions, not the Trust Act, and the relief the United States seeks would not provide it with any redress given Massachusetts law, *see Lunn v. Commonwealth*, 477 Mass. 517 (2017), and the Trust Act's savings clause, Bos., Mass., Mun. Code ch. 11 § 1.9(D)(3) (2019).

The interpretation of Article III standing that the United States asserts—that any alleged conflict between federal law and state or local laws or regulations is sufficient to establish the federal government's injury in fact—would have far-reaching implications. Most troublingly, it would invite the United States to use the federal courts as a tool to impose its political preferences on state and local governments. *See United States v. California*, No. 2:25-cv-06230, 2026 WL 784514, at *4 (C.D. Cal. Mar. 18, 2026) ("Without requiring the United States to show some redressable injury, the federal government might initiate a campaign of preemption suits under the aegis of its sovereignty to bring state laws in line with its own political agenda. The potential for abuse of the federal courts for political purposes is manifest."). Article III ensures that federal courts adjudicate disputes only where cognizable harm has occurred or is imminent; the United States may not avoid this constitutional requirement with a sweeping interpretation of its sovereign interests and injuries.

For these reasons, in addition to those in the City's Motion to Dismiss Plaintiff's Complaint, the Complaint should be dismissed.

## **LEGAL STANDARD**

Article III standing "serves to identify those disputes which are appropriately resolved through the judicial process" and to exclude from federal jurisdiction those that do not rise to the level of "cases and controversies." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). As the party

invoking federal jurisdiction, a plaintiff "bears the burden of pleading facts necessary to demonstrate standing," *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016), including that it has suffered an actual, concrete, and particularized injury in fact that is fairly traceable to the challenged action that will be redressed by a ruling in its favor. *Perez-Kudzma v. United States*, 940 F.3d 142, 144-45 (1st Cir. 2019). To determine whether a plaintiff has met its burden, a court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Kolackovsky v. Town of Rockport*, 165 F.4th 114, 119 (1st Cir. 2026) (citation and quotations omitted). "Neither conclusory assertions nor unfounded speculation can supply the necessary heft." *Hochendoner*, 832 F.3d at 731. Furthermore, "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (citation and quotations omitted).

## SUMMARY OF CLAIMS & RELIEF SOUGHT

The United States' standing relies entirely on its request for injunctive relief,[1] in which the United States seeks to prevent enforcement of certain provisions of the Trust Act. Specifically, the United States asks this Court to enjoin those sections of the Trust Act that prevent City employees from: (1) honoring federal detainer requests, and (2) sharing certain information with federal officials for purposes of civil immigration enforcement. *See* Compl. ¶¶ 6, 8; Dkt. No. 61 at 2.

---

[1] The United States seeks three forms of relief, although only its request for injunctive relief is relevant for purposes of standing analysis. The United States' request for a declaration that the Trust Act is invalid is not a basis upon which jurisdiction may be established. *California v. Texas*, 593 U.S. 659, 673 (2021). Likewise, the request for costs and fees is "a byproduct of the litigation itself" and does not provide a basis for jurisdiction. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998).

## ARGUMENT

The United States has not demonstrated that the Trust Act injures the federal government, or that any purported injury is traceable to City actions and can be redressed through the relief sought here. The Complaint should be dismissed.

### I.    The United States Fails to Allege Any Injury in Fact.

Article III standing requires that a plaintiff have suffered "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotations omitted). Allegations of injury that are "perfunctory and conclusory," lacking in "'specific information . . . regarding the harm, if any, that has befallen each individual plaintiff,'" do not suffice. *Kolackovsky*, 165 F.4th at 120 (finding no injury where plaintiffs complained that town policy would affect their property values but failed to provide facts demonstrating that such an injury had actually occurred) (quoting *Hochendoner*, 823 F.3d at 732 ("[T]he complaints offer only scattered descriptions of generalized harms.")).

The United States fails to allege any concrete or actual harm here. With respect to both detainer requests and information sharing, the United States asserts only that it is injured because the relevant Trust Act provisions are contrary to federal law, and violations of federal law necessarily injure the United States. *See, e.g.*, Dkt. No. 61 at 5 ("Boston continues to violate federal law, and this violation of federal law injures the United States."). This Court should reject such an expansive, abstract theory of standing. The Court should look instead for allegations of actual injury, which the United States—citing not a single example of specific harm it has actually suffered—does not make.

3

This Court should find that the United States has failed to adequately plead injury in fact and thus lacks Article III standing.

### A. The United States' General Interest in Compliance with Federal Law Does Not Suffice as Injury in Fact.

The United States does not establish injury sufficient for Article III standing merely by alleging a conflict between federal and local laws. Cognizable injury in fact consists of: (1) a legally protected interest; *and* (2) an invasion of that legally protected interest that concretely harms the plaintiff. *See Lujan*, 504 U.S. at 560. Here, the United States alleges only a legally protected interest.

The United States suggests that its interest in compliance with federal law, standing alone, can "substitute as a traditional injury in fact." *See* Dkt. No. 61 at 3. First Circuit courts have not yet addressed this contention, and this Court should not condone such a low bar. Most commonly, courts have found injury in fact based on sovereignty interests only where those interests are accompanied by allegations of concrete, actual injury. *See, e.g.*, *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (noting, in a False Claims Act case, that the injury asserted included "the proprietary injury resulting from the alleged fraud" against the federal government, and that sovereign injury "suffices to support a *criminal* lawsuit by the Government") (emphasis added); *United States v. Missouri*, 114 F.4th 980, 984 (8th Cir. 2024) (finding that "[t]he United States presented uncontroverted evidence that implementation of the Act impaired that

interest [in enforcing federal law], because state officials withdrew resources and manpower").[2]

Merely alleging that some sovereign interest may be harmed is not enough.[3]

This case starkly illustrates the "potential for abuse" that the low bar proposed by the United States would create. *California*, 2026 WL 784514, at *4. Absent a higher standard, the federal government could challenge any number of state and local laws, policies, or practices with which it disagrees, simply by alleging a conflict with federal law. *Id*. Such a standard could allow the federal government to use baseless allegations of conflict to drag state and local governments into litigation in an attempt to coerce them into acceding to federal policy preferences. *Id*. The United States is transparently doing so here.

### B. The United States Has Alleged No Concrete or Actual Injury.

The United States makes no allegation of injury in fact beyond alleged noncompliance with federal law. In its supplemental briefing, the United States suggests that it is asserting injury in fact aside from "sovereign harm": "sovereign harm can substitute as traditional injury in fact for

---

[2] *See also United States v. Oklahoma*, 739 F. Supp. 3d 985, 1006 (W.D. Okla. 2024) (reviewing a preliminary injunction, and finding irreparable harm to the United States' foreign policy interests based on "declarations provided by the United States regarding Oklahoma's interference with its comprehensive foreign-policy framework as well as Mexico's expression of its concern over the signing of [the state bill]"). The United States cites other cases for the general propositions that the United States has sovereignty interests and can, "in some circumstances," vindicate them in the federal courts. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015) ("It is true enough that we have long held that federal courts may *in some circumstances* grant injunctive relief against state officers who are violating, or planning to violate, federal law.") (emphasis added) (citations omitted); *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) (violation of federal sovereignty weighs in United States' favor for purposes of a preliminary injunction equities analysis); *Arizona v. United States*, 567 U.S. 387, 398 (2012) (federal government has sovereignty interests); *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982) (state governments have sovereignty interests).

[3] This Court should decline to follow the sole case cited by the United States applying a lesser standard, *La Unión del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 527 (W.D. Tex. 2022). While the *La Unión del Pueblo Entero* court articulated its holding broadly, it did so with reference to the *parens patriae* doctrine, *id.*, and having previously cited allegations that the state bill in question "will disenfranchise eligible Texas citizens who seek to exercise their right to vote" in several specific, identified ways. *Id.* at 526. Here, the United States' supplemental briefing does not base its claim to standing on impacts on the general welfare, never mind specific allegations of such impacts; the United States identifies its injury only as infringement of the United States' sovereign interests. At least one other court has explicitly declined to follow *La Unión del Pueblo Entero*, finding it could not "ignore the 'indispensable' element of injury-in-fact to establish Article III standing." *Am. All. for Equal Rights v. Raoul*, 795 F. Supp. 3d 1073, 1088 (N.D. Ill. 2025) (citation omitted) ("The Court has been presented with no binding authority stating that, where there is no case or controversy, the mere fact that the United States is a party is sufficient to bestow standing."). This Court should do the same.

purposes of standing, but even if not, the United States has nonetheless demonstrated an injury in fact." Dkt. No. 61 at 3. As it proceeds, however, the United States asserts no other theory of harm; it simply repeats the assertion that "noncompliance injures the United States because it violates federal law." *Id*. at 7; *see also id.* at 9 (relief "would prevent further violations of federal law"; "noncompliance continuously violates federal law").

Presumably, an alternative theory of injury in fact would assert that the United States suffers injury through the Trust Act's alleged "obstruct[ion]" of federal immigration officials. *See* Compl. ¶ 4. The United States' Complaint, however, contains not a single example of an instance in which the City did not detain an individual or provide information, resulting in an adverse impact on the federal government. Rather, the United States resorts to generalities, such as alleging: "upon information and belief, because of the challenged laws, DHS lacks the ability to consistently and readily obtain from local law enforcement the release dates of aliens . . . ." Compl. ¶ 46.[4] Such vague allegations do not plausibly establish injury in fact. *See Kolackovsky*, 165 F.4th at 120 (finding a lack of "'concrete and particularized' and 'actual or imminent' injury" where plaintiffs alleged that town policy "affected sharply their property values" and "undermined dramatically the expectation of property owners.") (quotations and alterations omitted); *see also Fac., Alumni, & Students Opposed to Racial Preferences v. Harvard L. Rev. Ass'n*, No. 18-12105-LTS, 2019 WL 3754023, at *7 (D. Mass. Aug. 8, 2019) ("Without additional detail, there is no way to discern whether a [member of the plaintiff organization] had an article rejected in the past

---

[4] If the United States suffered harm as a result of the Trust Act, it would have the information necessary to adequately allege injury. *See generally Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) ("We have recognized the pleadings on information and belief are permitted when the necessary information lies within defendants' control. In such circumstances, however, we also require that the allegations based on information be accompanied by a statement of the facts upon which the allegations are based.") (citations and quotations omitted). The fact that even an allegation about the United States' own operations, such as that contained in Paragraph 46, is made "upon information and belief" underscores that the United States lacks any factual basis for its claims.

(suggesting <u>actual</u> harm) or is preparing to submit an article in the reasonably foreseeable future (suggesting <u>imminent</u> harm).") (alterations in original).

The United States has failed to allege the concrete, actual harm necessary to establish injury in fact.

## II.    The Ills the United States Complains of Are Not Traceable to the Trust Act.

As discussed in Section I, *supra*, the United States has not alleged a cognizable injury. Courts in this circuit do not even address the question of traceability where there is no cognizable injury. *See, e.g.*, *Kolackovsky*, 165 F.4th at 119-21 (affirming dismissal for lack of standing because plaintiffs failed to establish that they had or likely would be injured in fact); *Town of Milton, Mass. v. FAA*, 87 F.4th 91, 98 (1st Cir. 2023) (dismissing for lack of Article III standing because plaintiff's "theory of standing . . . fail[ed] to pass muster upon consideration of the first element of the standing inquiry: injury in fact"). Accordingly, the Court need not undertake a traceability analysis here.

Even if the Court were to assess the United States' arguments on traceability, those arguments fail. The United States does not allege "a sufficiently direct causal connection between the challenged action and the identified harm." *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020). The United States alleges that it is harmed by Boston's decision not to undertake actions that federal law makes voluntary. But because of the voluntary structure of the INA—as required by the Tenth Amendment—the injury the United States asserts is traceable not to Boston's actions but to the INA itself, which gives the City the discretion to make the policy decisions with which the United States takes issue.

**III.    This Court Cannot Redress the United States' Alleged Injury with Respect to Either the Detainer or Information Sharing Provisions.**

At the motion to dismiss stage, a plaintiff must allege sufficient, plausible facts to show it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (citation and quotations omitted). The injuries the United States alleges—with respect to both detainers and information sharing—are not redressable through the relief the United States seeks here. With respect to detainers, under state law, Boston Police officers lack authority to detain individuals pursuant to civil immigration detainers, regardless of the Trust Act. With respect to information sharing, the Trust Act's savings clause ensures that the relief the United States seeks—a declaration of the Trust Act's invalidity and an injunction preventing its enforcement—would not be warranted.

> A.  *Boston Police Officers Lack Authority to Arrest Individuals Pursuant to Detainer Requests Even in the Absence of the Trust Act.*

The United States alleges that the Boston Trust Act "unlawfully eliminate[s]" the use of civil immigration detainers permitted by the INA. Compl. ¶ 63. The injunctive relief the United States seeks, however, will not redress its alleged injury, as Massachusetts state law would still prevent law enforcement officers from detaining individuals based solely on civil immigration detainers. *See Lunn*, 477 Mass. at 531-33.

The United States concedes as much in its supplemental briefing, noting that "state law does not authorize officers to make arrests based on immigration detainers." Dkt. No. 61 at 7 (citing *Lunn*, 477 Mass. at 519). The United States makes two arguments in attempting to avoid this fatal issue: first, that the Trust Act predates and does not cite *Lunn*, and *Lunn* is therefore not the reason the City does not honor detainer requests, *id.* at 7-8; and second, that enjoining

enforcement of the Trust Act would provide at least partial redress, *id.* at 8-9. A wealth of countervailing authority shows why this Court should reject the United States' arguments.

First, the City's citation of the Trust Act, rather than *Lunn*, as the basis for its actions with respect to detainers is irrelevant to the question of redressability. Redressability analysis is a practical inquiry, assessing whether the relief sought, given the injuries claimed and parties involved, will actually provide redress. *See, e.g.*, *Murthy v. Missouri*, 603 U.S. 43, 73-74 (2024) (finding that an injunction against government defendants was unlikely to affect third-party social media platforms, which controlled the actions complained of by the plaintiffs). Regardless of the stated basis for the alleged City actions, the fact remains that under *Lunn*, Massachusetts law enforcement officers lack authority to conduct arrests pursuant to civil immigration detainers. And *Lunn* squarely rejected that Massachusetts officers have any "implicit" or "inherent" authority under federal law to arrest for civil immigration offenses in excess of Massachusetts common or statutory law. 477 Mass. at 532-34. This ruling is grounded strongly in the federalism principles embodied by the Tenth Amendment, which were briefed thoroughly in the City's Motion to Dismiss, Dkt. No. 16, and Reply, Dkt. No. 58. *See Lunn*, 477 Mass. at 533-34 (observing that because state law limits warrantless arrests for criminal misdemeanors, "[r]ecognizing a new common-law power to effect a Federal civil immigration arrest would also create an anomaly in our common law . . . officer[s] would have greater authority to arrest for a Federal civil matter than for a State criminal offense").

Absent action by the Massachusetts Legislature to statutorily authorize state officers to arrest for civil immigration offenses, nothing can resolve the United States' alleged injury. This case exemplifies the "bedrock principle that a federal court cannot redress injury that results from the independent action of some third party not before the court." *Murthy*, 603 U.S. at 57 (quotations

omitted). Injuries that require state legislative action to remedy are not redressable because they "depend[] on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 614-15 (1989) (holding that petitioners' injuries were not redressable where redress of economic injury would rely on the state legislature using the increased revenue that plaintiffs claimed would result from the relief they sought to lower taxes or increase teacher pay rather than using it on some other policy priority).

The United States suggests that it could cure this defect by bringing "a separate suit" in the event "Boston still refuses to comply with federal immigration detainers based on *Lunn*." Dkt. No. 61 at 8. In making this argument, the United States effectively concedes that this Court cannot redress its injury in the current proceeding. Where a plaintiff "would still have to succeed on a [future] preemption suit," this Court has held that an injury is not redressable. *Am. Waterways Operators v. U.S. Coast Guard*, 613 F. Supp. 3d 475, 484 (D. Mass. 2020) (holding that plaintiff's injury was not redressable because, even if the court ordered the Coast Guard to conduct further environmental review, plaintiff would still have to succeed in a preemption suit against Massachusetts to invalidate state tugboat regulations).

Second, this Court cannot redress the United States' alleged injuries, even partially, for the same reasons. Partial redressability may provide a basis for standing only if a "court can fashion a remedy that will at least lessen [the] injury." *Dantzler*, 958 F.3d at 49. The United States suggests that, even considering *Lunn*, invalidating the Trust Act will lessen its injury "because there would be at least one less restriction on Boston's noncooperation with immigration authorities." Dkt. No. 61 at 8. Unlike in the cases the United States cites, however, the removal of this "restriction" would do nothing to diminish the United States' purported injury. Such diminution is required for the

10

partial redressability doctrine to apply. *See, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007) (finding that a plaintiff had standing because even though "regulating motor-vehicle emissions will not by itself *reverse* global warming, it by no means follows that we lack jurisdiction to decide whether EPA has a duty to take steps to *slow* or *reduce* it") (emphases in original); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153 (2010) (holding that dissolving an injunction would allow the plaintiff to return to an administrative agency and request further deregulatory action, which would at least partially redress the plaintiff's injury); *Antilles Cement Corp. v. Fortuno*, 670 F.3d 310, 318 (1st Cir. 2012) (finding standing because the plaintiff "stands to benefit" if the local law was nullified because it would then only be "subject . . . to the looser strictures" of a different law); *Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589 F.3d 458, 468-69 (1st Cir. 2009) (holding that the plaintiff had standing to challenge state inaction delaying a federal regulatory review process even where the outcome of that regulatory review would remain uncertain because it would still "clear a barrier to achieving approval for the project"); *Doe v. Austin*, 755 F. Supp. 3d 51, 63-64 (D. Me. 2024) (finding standing while noting that "this is not a case where the Plaintiffs' relief requires action by nonparties who would not be bound by a court ruling").

Implicit in each of these rulings is that standing only lies if a court's relief changes *something* to the plaintiff's benefit. The relief the United States seeks here would change nothing. Even without the Trust Act, *Lunn* makes it clear that Boston Police officers cannot arrest individuals pursuant to civil immigration detainers, so the United States' alleged injury is not partially redressable by this lawsuit.

11

B. *The Trust Act's Savings Clause Prevents the United States from Obtaining the Declaration of Invalidity and Injunction Preventing Enforcement of the Trust Act's Information Sharing Provisions.*

Similarly, the Trust Act's savings clause prevents the United States from obtaining the redress it seeks with respect to the Trust Act's information sharing provisions. Specifically, the United States requests a declaration that the Trust Act is invalid because it conflicts with 8 U.S.C. § 1373 and an injunction prohibiting enforcement of the Trust Act. However, pursuant to the savings clause, the Trust Act "does not prohibit or restrict any [City official] from complying with 8 U.S.C. §§ 1373 and 1644." Bos., Mass., Mun. Code ch. 11, § 1.9(D)(3) (2019). The United States has challenged only that the Trust Act is inconsistent with § 1373 on its face, and has sought a declaration that the Trust Act is invalid. Even if this Court agreed with the United States that either the Trust Act restricts the sharing of immigration status information (it does not) or that §§ 1373 and 1644 prohibit restrictions on sharing individuals' personal information more broadly (they do not), and found that compulsory information sharing would not violate the Tenth Amendment (it would), the United States could seek a declaration only that the Trust Act must be implemented accordingly. It would not be entitled to a declaration that the Trust Act is invalid or an injunction preventing the Act's enforcement, as the United States seeks. The United States, therefore, has failed to demonstrate redressability with respect to the Trust Act's information sharing provisions.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Defendants' Motion to Dismiss Plaintiff's Complaint, this Court should **DISMISS** the Complaint with prejudice.

Dated: April 15, 2026

Respectfully submitted,

**CITY OF BOSTON,
MICHELLE WU,
BOSTON POLICE DEPARTMENT,
AND MICHAEL A. COX**

By their attorneys:

Michael Firestone
Corporation Counsel


*/s/ Samuel B. Dinning*
Samuel B. Dinning (BBO # 704304)
Thomas J. Broom (BBO # 703136)
Edward F. Whitesell (BBO # 644331)
Senior Assistant Corporation Counsels
City of Boston Law Department
One City Hall Plaza, Room 615
Boston, MA 02201
(617) 635-4034
samuel.dinning@boston.gov
thomas.broom@boston.gov
edward.whitesell@boston.gov

Toby Merrill (BBO # 601071)
Erin Monju (DC # 90036952), *Pro Hac Vice*
Grace Lee (DC # 90021719), *Pro Hac Vice*
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
erin@publicrightsproject.org
toby@publicrightsproject.org
grace.lee@publicrightsproject.org

13

## <u>CERTIFICATE OF SERVICE</u>

I, Samuel Dinning, hereby certify that on April 15, 2026, I served a copy of the foregoing document via electronic filing (ECF) on all counsel of record.

*/s/ Samuel B. Dinning*
Samuel B. Dinning

14